{¶ 25} I concur with the court's decision upholding the trial court's denial of appellant's motion to suppress. I am constrained, however, to comment on the assertion in the state's brief before this court that the trooper's decision to employ the drug dog was buttressed by a "litany of criminal indicators." In fact, these indicators of drug courier activity are offered without explanation or supporting data, and, unsupported, the list is more an example of prosecutorial hyperbole than anything else. Further, a search of the record below (especially the suppression hearing itself) fails to reveal why any of the factors would be indicative of criminal behavior. Thus, to disabuse future readers that such indicators are accepted as such, the following examples are offered:
 {¶ 26} "1. The truck had Florida plates on it." Is this sinister because the plates are simply out-of-state (not exactly an unusual occurrence on an interstate highway)? Or, is it more indicative of criminal behavior because it is Florida, as opposed, say, to Arizona, Nebraska, or New Hampshire?
 {¶ 27} "2. The truck had a hardened locked cap over the bed, an after-market modification which was consistent with previous situations involving drug couriers." What "previous situations?" Locally? Nationally? Who provides this kind of data? And, is there any way of distinguishing between innocent after-market caps and sinister ones, given the fact that after-market caps are a rather popular modification for a pickup truck?
 {¶ 28} "3. The cab of the truck was very cluttered." Certainly, it may be surmised that vehicles traveling our interstate highway system are frequently cluttered with the detritus of long-distance travel: snack bags, sandwich wrappers, French fry containers, cups, soda and water bottles, candy wrappers, coolers, brochures, maps, newspapers, and the like. Clutter is likely the norm.
 {¶ 29} "4. The Appellant had a cell phone." Given the exponential growth of the cell phone market over the past decade, this "indicator" is simply absurd. I may be the last person left in America who doesn't travel with a cell phone.
 {¶ 30} "5. The Appellant had trip tickets." Is this sinister because statistics show that most self-respecting drug couriers are members of AAA? Or, why, exactly?
 {¶ 31} "6. The Appellant had an atlas." This, too, is absurd, and requires little, if any, comment. But maybe someone should alert Rand McNally.
 {¶ 32} "7. The Appellant had a set of golf clubs in the cab rather than in the locked bed of the truck." Is this sinister because the clubs in the cab would leave more room for contraband in the bed? If so, it needs to be pointed out that contraband of the sort that drug dogs are trained to detect is not generally so bulky as to occupy an entire truck bed. Below, the prosecutor made some reference to golf clubs being an expensive item (though this court is blissfully unaware of the clubs in question here: New? Old? Matched? Mismatched?). And why is leaving even a valuable set of golf clubs in the cab indicative of criminality? Profligacy, perhaps, but not criminal. Maybe the prosecutor is hinting that an interest in golf bespeaks an abnormal, psychological penchant for masochistic behavior.
 {¶ 33} "8. The Appellant kept his luggage in the cab of the truck rather than in the locked bed of the truck." Many of the same observations about the golf clubs apply here as well. Plus, obviously, having luggage in the cab provides easy access.
 {¶ 34} Four additional "criminal indicators" deal with nervousness (#s 14, 15, 16, and 18). Certainly nervousness cannot be an atypical reaction of a motorist when stopped by a state trooper. Here, according to Trooper Beatty, the appellant avoided eye contact with her; he rubbed his palms on the tops of his thighs; he volunteered information; and he "began hesitating when speaking with Trooper Beatty." Obviously, these actions are all highly subjective in nature, and are in no way objectively verifiable. Where the basis of the traffic stop itself is wholly subjective, as here, a certain cynicism is triggered throughout the criminal defense bar, and one begins to wonder about excessive zeal, profiling, or even pretextuality. Occasionally such factors even cause involuntarily arched eyebrows among trial and appellate judges.
 {¶ 35} This is particularly so where, as here, the trooper verified within a few seconds that the defendant was neither sleepy nor intoxicated, and where the defendant was held for a number of minutes owing to the technological glitch that delayed verification of his ostensibly valid license and paperwork, and thus delayed his departure.
 {¶ 36} For me, this case turns on the cumulative impact of defendant's confused and conflicting explanations as to his immediate past point of origin, his destination, and matters of mileage left to travel, which are covered (somewhat repetitively) in items 9-13, item 17, and items 19 and 20. These, standing alone, unbuttressed by the preposterous other "criminal indicators" formed a basis for invoking the drug dog, and the subsequent arrest.
 {¶ 37} In the future, ideally, bald assertion will be replaced by fully articulable reasons for the ensuing search.